IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DEBRA BAILEY, Individually and as next friend of JACOB WYATT BAILEY, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CIVIL ACTION NO. 9:15-CV-57 |
| | § § | |
| HEALTHSOUTH CORPORATION, BEAUMONT REHABILITATION ASSOCIATES, L.P., d/b/a HEALTHSOUTH REHABILITATION CENTER-BEAUMONT, and HEALTHSOUTH REHABILITATION HOSPITAL OF BEAUMONT, LLC, f/k/a BEAUMONT REHABILITATION ASSOCIATES, L.P., | § § § § § § § § § § § | |
| *Defendants*. | § | |

REPORT AND RECOMMENDATION ON
MOTION TO COMPEL ARBITRATION

In accordance with 28 U.S.C. § 636(b)(1) and the Local Rules for the United States District Court for the Eastern District of Texas, the District Court referred the above-captioned civil action to the undersigned United States Magistrate Judge for consideration of pretrial motions and proceedings and entry of findings of fact and recommended disposition on case-dispositive motions.  Pending before the Court for purposes of this report is the Defendants' *Motion to Compel Arbitration* (Doc. No. 26).

I.      Background

A.      Pled Claims and Procedural History

On April 29, 2015, plaintiff Debra Bailey, Individually and as Next Friend of Jacob Wyatt Bailey (her son) (hereinafter "Plaintiff" or "Bailey"), filed her Original Complaint (Doc. No. 1)

1

against defendants HealthSouth Corporation, Beaumont Rehabilitation Associates, L.P., d/b/a HealthSouth Rehabilitation Center-Beaumont, and HealthSouth Rehabilitation Hospital of Beaumont, LLC, f/k/a Beaumont Rehabilitation Associates, L.P., (hereinafter collectively "Defendants."). According to her complaint, on or about June 29, 2013, Bailey alleges that she was seriously injured and permanently disabled while attempting to lift a 350-pound male patient from his wheelchair to a bedside commode. She did so in the course and scope of her employment for Defendant HealthSouth, Corp., and the incident occurred at the HealthSouth Rehabilitation Hospital in Beaumont, Texas.

Based on these factual allegations, Bailey asserts a cause of action for negligence against the HealthSouth defendants. *See Complaint* (Doc. No. 1), at p. 1. She specifically contends that the defendants were negligent based on the following: (1) HealthSouth did not have the proper equipment necessary to safely move large patients, (2) HealthSouth did not maintain the necessary staff on call to assist in moving large patients safely, (3) one of Bailey's co-workers failed to properly assist her, and (4) HealthSouth failed to properly train fellow HealthSouth employees. *Id*. at pp. 1-2. She contends that the defendants' negligent actions proximately caused her injuries and permanent disability. She seeks damages in the form of past wages, future loss of income, past and future medical expenses, and reimbursement for past and future pain, suffering, and mental anguish. *Id*. at pp. 4-5. Bailey also claims for damages for physical impairment and disability, both past and future. *Id*. at p. 5. Lastly, she seeks damages for loss of consortium on behalf of her son. *Id*.

B.      Motion to Compel Arbitration and Related Briefs

On May 27, 2016, the defendants filed the pending motion to compel arbitration, in which they argue that Bailey's negligence claims are subject to arbitration under a Receipt, Safety Pledge,

and Arbitration Acknowledgement ("the Acknowledgement") signed by Bailey on June 28, 2013. *See Motion*, at p. 2; *see also Acknowledgment, Exhibit A to Motion* (Doc. No. 26-1).  Defendants argue that the Acknowledgement includes clear language specifying that any claims or disputes arising out of an on-the-job injury must be submitted to an arbitrator.  *Id*.  Defendants relatedly contend that prior to the incident of Ms. Bailey's injury, it also had in place an occupational injury benefit plan promulgated pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.§ 1001-1461, titled the HealthSouth Responsible Employee Safety & Health Plan ("the Plan").  *See Motion*, at p. 2.  Defendants argue that the Plan also contains express and clear arbitration provisions and that Bailey's claims on behalf of herself and her son are encompassed by the Plan's arbitration provisions.  *Id*.  at pp. 2-4, 6; *see also The Plan, Exhibit B to Motion* (Doc. No. 26-1).  Defendants finally contends that based on principles of equitable and direct-benefit estoppel, Bailey should not be allowed to avoid the arbitration under the Plan because she pursued and received Plan benefits before filing suit.  *See Motion*, at pp. 5-6, *see also Bailey's Appeal of Adverse Benefit Determination, Exhibit D to Motion, and Itemization of Plan Benefits, Exhibit C to Motion* (Doc. No. 26-1).

Plaintiff responded in opposition to the motion to compel arbitration (Doc. No. 29).  She contends that the Acknowledgment is unenforceable because it is procedurally unconscionable and she signed it *after* her on-the-job injury.  *See Response*, at pp. 2, 6.  Plaintiff avers that she was intentionally misled into signing the Acknowledgment.  *Id*. at p. 6.  She contends that this constitutes an affirmative misrepresentation rendering the Acknowledgement procedurally unconscionable.  *Id*.  at pp. 6-7.  Ms. Bailey argues that she believed she was signing documents as part of an incident report related to her injury rather than an arbitration agreement. She argues that she was improperly pressured to sign the Acknowledgment and HealthSouth withheld medical

care for her injury until after she signed the document.  Based on the foregoing, Bailey contends that given the circumstances, the signing of the Acknowledgment was procedurally unconscionable, thus rendering it unenforceable.

Plaintiff relatedly avers that the Defendants' equitable estoppel arguments are without merit because she is seeking common law damages in this suit and is not seeking contractual benefits provided by the Plan.  *Id*.  at p. 8.  She also argues that equitable estoppel requires more than merely showing that she accepted benefits under the Plan; it also requires a showing that she accepted the Plan benefits with full knowledge of the procedural unconscionability that invalidated the agreement.  *Id*.  Bailey maintains that there is no evidence that she consistently sought benefits under the plan to support a finding of equitable estoppel.  *Id*.  at p. 9.

Defendants replied (Doc. No. 31) to the plaintiff's response, and Plaintiff in turn filed a sur-reply (Doc. No. 35).  Defendants contend that the Acknowledgement is valid despite her having signed it after her injury.  They also argue that the cases relied upon by Plaintiff in support of procedural unconscionability are distinguishable on the facts.  Defendants further reiterate that equitable estoppel should preclude Bailey from avoiding arbitration, given the circumstances surrounding her request for benefits under the Plan.  *See Reply*, at pp. 4-6.  Bailey then contends that the denial of medical treatment pending the signature of the Acknowledgement rises to the level of rendering the bargaining process void.  *See Sur-Reply*, at pp.  2-3.  She also discusses the Defendants' objections to her affidavit which she submitted with her response to the motion to compel arbitration.

## II.      Discussion

A.      General Principles Regarding Arbitration

In determining the arbitrability of a dispute, this Court is guided by "four general

principles" enunciated by the United States Supreme Court.  *Hays v. HCA Holdings, Inc*., No. A-15-CA-432-SS, 2015 WL 5737963, at *3 (W.D. Tex. Sept. 30, 2015)(citing *Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir.2006)). First, because arbitration is a creature of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Id.* Quoting *Tittle*, at 418.  Second, the threshold question of whether the parties agreed to arbitrate is one for the courts, not the arbitrator, unless "the parties clearly and unmistakably provide otherwise."  *Id.* Third, this Court is not to consider the merits of the claims in determining arbitrability.  *Id.* Fourth, "where the contract contains an arbitration clause, there is a presumption of arbitrability." *Id.* The presumption of arbitrability requires this Court to resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration.  *Id.*

Mindful of these guiding principles, this Court conducts a two-step analysis in deciding whether to compel arbitration under the Federal Arbitration Act.  *Id.* (internal quotations omitted). The first step is to "determine whether the parties agreed to arbitrate the dispute in question." *Id.* This step involves two inquiries: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.  See also Tittle*, at 418; *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir.1996).  The second step is to determine whether legal constraints external to the parties' agreement foreclose the arbitration of those claims.  *Id*

The Federal Arbitration Act declares written arbitration agreements in any contract involving commerce "valid, irrevocable, and enforceable," unless the terms are unenforceable under general applicable contract law doctrines such as fraud, duress, or unconscionability. *Micheletti v. Uber Techs., Inc*., No. 15-1001, __F. Supp. 3d __, 2016 WL 5793799, at *2 (W.D. Tex. Oct. 3, 2016)(citing 9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687,

116 S. Ct. 1652, 134 L.Ed.2d 902 (1996)). "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Id*.  Quoting *Rent–A–Center, W., Inc. v. Jackson,* 561 U.S. 63, 68 (2010).  Parties to a valid arbitration agreement will be compelled to arbitrate claims that fall under the scope of the agreement unless some public policy or contract doctrine renders those claims nonarbitrable.  *Id*. There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.  *Id*.  at *3 (citing *Carter v. Countrywide Credit Indus., Inc.,* 362 F.3d 294, 297 (5th Cir.2004)).

The validity of an arbitration agreement is a question of state law.  *Id*.  Citing *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004).  Where the contract was signed and performed by a plaintiff who lives in Texas, the laws of Texas apply.  *Id*. at *5 (Citing *DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 678-79 (Tex. 1990)); *see also Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)("[i]n determining whether the parties agree to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement.") Here, based on the briefs before the Court, the parties appear to agree that Texas law applies to the dispute regarding arbitration.

      B.      Procedural Unconscionability

            i.      *Legal Principles Regarding Unconscionability*

Under Texas law, arbitration agreements may be either substantively or procedurally unconscionable, or both.  *Id*.  at *5  (citing *Royston, Rayzor, Vickery & Williams, LLP v. Lopez,* 467 S.W.3d 494, 499 (Tex.2015)).  Here, the plaintiff argues for a finding of procedural unconscionability.  Whether an agreement is procedurally unconscionable rests on whether there is unfair surprise or oppression.  *Id*.  Citing *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 679

(Tex.2006).   Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms.  *Id*.  Citing *In re McKinney,* 167 S.W.3d 833, 835 (Tex.2005).  Further, a contract term is not procedurally unconscionable just because one party may have been in a less advantageous bargaining position. *Id*.  Citing *In re Palm Harbor Homes,* 195 S.W.3d at 679.  Indeed, the "only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement," such as where one of the parties did not speak English.  *Id*. Quoting *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1077 (5th Cir.2002); *see also Velasquez v. WCA Mgmt. Co*., No. 4:15-CV-02339, 2016 WL 4440332, at \*10 (S.D. Tex. Aug. 23, 2016)(citing *BBVA Compass Inv. Solutions, Inc., v. Brooks*, 456 S.W.3d 711, 724 (Tex.  App. – Fort Worth 2015, no pet.))   Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract.  *In re Advance PCS Health, L.P*., 172 S.W.3d 603, 608 (Tex. 2005)(citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 33 (1991);  *EZ Pawn Corp v. Mancias*, 934 S.W.2d 87, 90-91 (Tex.1996)(per curiam)). Unconscionability is ultimately a legal question to be determined in light of a variety of factors and on a case-by-case basis.  *In Matter of Marriage of Ard*, No. 14-14-00808-CV, 2016 WL 3901902, at \*4 (Tex. App. – Houston [14th Dist.] July 14, 2016, pet. filed)(citing *In re Poly-Am.*, *L.P*., 262 S.W.3d 337, 348 (Tex. 2008)).

ii.     *Application*

As discussed above, the burden is on the plaintiff to establish that the arbitration provision at issue here is unconscionable.  Ms. Bailey contends that the circumstances surrounding the

execution of the arbitration Acknowledgement render it procedurally unconscionable and, therefore, invalid.  In support, she avers that she signed the Acknowledgement after her injury, she was not advised what she was signing by HealthSouth employees, and she was misled into believing that she was signing a document relating to the incident causing her injury, or an "incident report."  *See Plaintiff's Response*, at p. 6.  She further contends that she was "carted off" to a conference room while still in pain and was denied medical attention by HealthSouth employees until she signed the Acknowledgement.  *Id.*  at p. 7.  Bailey argues that based on *Delfingen US-Texas v.  Valenzuela*, 407 S.W.3d 791 (Tex. App. – El Paso 2013, no pet.), she signed the Acknowledgement under false pretenses and extreme duress, thus making that document procedurally unconscionable based on the circumstances surrounding its execution.  *Id.*

*Valenzuela* is distinguishable.  In that case, as in most cases where the court found unconscionability (as noted above), the plaintiff was "illiterate to the English language." *Valenzuela*, 407 S.W.3d at 800.  Ms. Bailey has not claimed that she is illiterate or does not speak English.  Furthermore, in that case, the finding of unconscionability was based on the defendant's affirmative knowledge of Valenzuela's English illiteracy coupled with evidentiary findings that despite that knowledge, the defendant still did not explain or translate the arbitration agreement to Valenzuela.  *Id.*  The same circumstances are not at issue here.  When a person signs a contract, she must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract.  *See ReadyOne Indus., Inc. v. Flores*, 460 S.W. 656, 667 (Tex. App.– El Paso 2014, pet. denied)(distinguishing *Valenzuela*).  Other than Bailey's statements that she thought she was signing an "incident report" (which she undisputedly had the ability to read herself), there is no evidence of affirmative representation, trick, or artifice.  *See id.*  at 668.  Furthermore, there is no

8

showing of "fraud or overwhelming economic power." *See In re Advance PCS Health, L.P*, *supra*. The plaintiff's allegations of duress are insufficient to establish unconscionability under the governing legal standards.

Granted, the events surrounding Ms. Bailey's execution of the document are not ideal.  She did, however, admittedly sign the Acknowledgement.  Even if the Court were to consider her declaration as competent evidence, the statements therein do not indicate circumstances which rise to the level necessary to render the arbitration provision procedurally unconscionable under the applicable cases.  She believed that the documents were part of an incident report and states that she was advised as much by Amber Ardoin, a HealthSouth employee. *See Declaration of Debra Bailey, Exhibit 2 to Plaintiff's Response* (Doc. #29-2).  She states she "never read the word arbitration," and was never informed that the documents she signed included a reference to arbitration. *Id*.  Just because she was in a less advantageous bargaining, position, however, does not support a finding of procedural unconscionability. *See Micheletti*, 2016 WL 5793799, at *5 (citing *In re Palm Harbor Homes*, 195 S.W.3d at 679).  There is no evidence that Ms. Bailey was unable to read the Acknowledgement or that she was wholly incapable of understanding the agreement had she read it. *See id.*  Furthermore, in Texas a party is generally bound by the terms of the contract she signed, regardless of whether she read it or thought it had different terms. *See In re McKinney*, 167 S.W.3d at 835.  Therefore, given the circumstances presented, the Court finds that the arbitration provision contained in the Acknowledgement is not procedurally unconscionable.

C.      Equitable Estoppel

            i.      *Legal Principles Related to Estoppel*

Equitable estoppel is one of the six theories recognized in Texas under which a non-signatory can be bound to, or permitted to enforce, an arbitration agreement.  *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 524 (Tex. 2015).   Under an equitable estoppel theory, a litigant who sues based on a contract subjects herself to the contract's terms, including an arbitration provision.  *Hays*, 2015 WL 5737963, at *4 (citing *G.T. Leach*, 458 S.W.3d at 527).  Although federal courts recognize several species of equitable estoppel that can be used to compel arbitration, the Texas Supreme Court has, however, only recognized one such species – the "direct -benefits" theory, expressly rejected another, the "concerted-misconduct" theory, and implied a third might be viable under Texas law, the "intertwined-claims" theory.  *See Hays*, at *5 (citing *Hill v. GE Power Sys. Inc.*, 282 F.3d 343, 349 (5th Cir. 2002); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192-94 (Tex. 2007)).

Here, the defendants argue for application of the direct-benefits theory of equitable estoppel, which has been adopted by the Texas Supreme Court, as noted above.  The Court will accordingly focus the estoppel inquiry on that theory.

"Direct-benefits estoppel" may be used to estop a non-signatory claimant from simultaneously seeking the benefits of a contract and denying the applicability of an arbitration provision under the contract that contains the arbitration agreement.  *See ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 274 (Tex. App. -- Beaumont 2014, no pet.); *see also In re Kellogg Brown & Root, Inc.*, 166 SW.3d 732, 739 (Tex. 2005).  The doctrine recognizes that a party may be estopped from asserting that her lack of signature on a written contract precludes enforcement of the contract's arbitration provision when she has consistently maintained that other provisions of

the same contract should be enforced to benefit her.  *See ENGlobal*, at 274-75 (citing *Rachal v. Reitz,* 403 S.W.3d 840, 845-46 (Tex. 2013)).  The doctrine accordingly precludes a litigant from both having her contract and defeating it too.  *See id.* at 275 (quoting *In re Weekley Homes, L.P.*, 180 S.W. 3d 127, 131 (Tex. 2005)).

Direct-benefits estoppel can apply to bind a non-signatory to an arbitration agreement in two ways.  *Id.* Citing *Weekley Homes*, at 131–35.  First, a non-signatory who uses the litigation process to sue based on a contract subjects him or herself to the contract's terms.  *Id.*  Citing *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 755 (Tex.2001).  A non-signatory sues "based on a contract" when he or she "seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision."  *Id.*  Quoting *Kellogg Brown & Root,* 166 S.W.3d at 741.  "[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading."  *Id.*  Quoting *Weekley Homes,* 180 S.W.3d at 131–32; *see also Hays*, 2015 WL 5737963, at *5.  A claim seeks a direct benefit from a contract, and arbitration can be compelled, if liability under the claim "arises solely from the contract or must be determined by reference to it."  *Id.*  Quoting *Weekley Homes*, at 132; *see also Kellogg Brown & Root,* 166 S.W.3d at 739 ("[A] non-signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision.").

By contrast, a claim does not seek a direct benefit from a contract, and arbitration cannot be compelled, if liability under the claim "arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law."  *Id.*  Quoting *In re Morgan Stanley & Co., Inc.,* 293 S.W.3d 182, 184 n. 2 (Tex. 2009); *see also Kellogg Brown & Root,* 166 S.W.3d at 739–40 ("If, however, a non-signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under [a direct benefits

11

estoppel] theory."); *G.T. Leach*,458 S.W.3d at 528.. Thus, "although a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration provision." *Kellogg Brown & Root,* at 741. Rather, "'[t]he benefits must be direct — which is to say, flowing directly from the agreement.'" *Id.* (Quoting *MAG Portfolio Consult., GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 61 (2d Cir.2001)).

The second way in which direct-benefits estoppel may be applied to bind a non-signatory to an arbitration agreement is when the non-signatory "seek[s] or obtain[s] direct benefits from a contract by means other than a lawsuit." *ENGlobal*, at 275 (quoting *Weekley Homes,* 180 S.W.3d at 132)). Under this application of the doctrine, a non-signatory may be compelled to arbitrate if he or she deliberately seeks and obtains substantial benefits from the contract during the performance of the agreement. *Weekley Homes*, at 132–33. If the non-signatory consistently and knowingly insists that others treat it as a party to the contract during the life of the contract, the nonparty "cannot later 'turn [ ] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful.'" *Id.* at 135 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 200 (3d Cir.2001)).

ii.     *Application*

In summary, in deciding whether the plaintiff should be compelled to arbitrate under direct-benefits estoppel, the Court must consider (1) whether Ms. Bailey's claims in this suit seek direct benefits under the applicable Plan or (2) whether she deliberately sought and obtained substantial benefits from the Plan itself outside of litigation. *See ENGlobal*, at 276; *Hays*, 2015 WL 5737963, at \*5. As pointed out by Defendants, Ms. Bailey invoked the administrative procedures under the Plan and sought benefits pursuant to the Plan's procedures. *See Exhibit D to Motion to Compel; Debra Bailey's Appeal of Adverse Benefit Determination* (Doc. No. 26-1). This included the

request that the Plan provide benefits for medical treatment, including spinal surgery.  *Id*.  Ms. Bailey, through her counsel retained to pursue benefits, clearly had purported notice of the Plan and the benefits provided therein as evidenced by her appeal.  There is no disputing that she pursued Plan benefits prior to filing this suit.  It follows that she "embraced" the Plan by knowingly seeking direct benefits under the Plan.  *See Noble Drilling Servs., Inc. v. Certex USA, Inc*., 620 F.3d 469, 473 (5th Cir. 2010)(citing *Hellenic Inv. Fund, Inc. v. Del Norske Veritas*, 464 F.3d514, 517-18 (5th Cir. 2006)).

Furthermore, she also received medical and indemnity benefits pursuant to the Plan. *See Exhibit C: to Motion to Compel, Itemization of Plan Benefits*.  Direct-benefit estoppel is premised upon preventing the very situation at issue here:  Ms. Bailey should not be permitted to receive medical and indemnity benefits under the Plan, invoke Plan procedures, thus "insist[ing] that others treat her as a party to the [Plan]," and then turn her back on other portions of the Plan, such as the arbitration clause, which she "distasteful."  *See Weekley Homes*, at 135.

 Ms.  Bailey attempts to argue away the application of equitable estoppel by differentiating her claims as common law causes of action instead of direct claims on the contract.  The Court has already found that the doctrine applies because she sought Plan benefits *before* and separate from this litigation.

Additionally, as part of this suit, she is seeking damages in the form of reimbursement for medical expenses for the injuries she suffered while on the job at HealthSouth.  *See Complaint*, at ¶18.  Medical benefits are covered by the Plan, as evidenced by her receipt of those benefits and her appeal of the denial of certain benefits.  In this case, Bailey had knowledge of the Plan's terms regarding medical benefits, and now she should not be permitted to argue away the application of the arbitration clause of the same Plan through "artful pleading."  *See ENGlobal*, at 275.  Notably,

13

the Plain itself also encompasses all negligence claims, as well as claims brought by a Plan beneficiary's children.  *See Plan*, at p. 29 ("Resolution of Certain Injury-Related Disputes")(*Exhibit B to Motion to Compel*).  Ms. Bailey availed herself of the benefits of the Plan before filing suit and, accordingly, under the direct-benefits theory of equitable estoppel, cannot avoid the arbitration clause under the very same Plan now that litigation has been filed.

### III.      Conclusion and Recommended Disposition

Based on the findings and legal conclusions stated herein, the Court concludes that the arbitration Acknowledgement at issue was not procedurally unconscionable and the plaintiff is equitably estopped from arguing against the application of the arbitration provision of the Plan. The undersigned therefore recommends that the defendants' *Motion to Compel Arbitration* (Doc. No. 26) be **granted**, the parties be compelled to arbitration, and this proceeding be **stayed** pending completion of arbitration.

The Court would also recommend that the defendants' separate motion to dismiss (Doc. No. 27) be **denied as moot**, without prejudice to reassert, as it was filed subject to the Court's ruling on arbitration.

### IV.      Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c), all parties are entitled to serve and file written objections to the report and recommendation of the magistrate judge within fourteen (14) days of service.

Failure to file specific, written objections to the proposed findings of facts, conclusions of law, and recommendations contained within this report shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions, and recommendations, and

14

from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error.

**SIGNED this the 26th day of January, 2017.**

 

 

_____

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE